***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| G.E. and J.E. on behalf of H.E., <br><br> Plaintiffs, <br><br> v. <br><br> FREEHOLD REGIONAL HIGH SCHOOL DISTRICT BOARD OF EDUCATION, <br><br> Defendant. | Civ. Action No. 3:22-cv-05049 <br><br> **OPINION** |

CASTNER, District Judge

**THIS MATTER** comes before the Court upon the Motion for Emergent Relief (("Motion for Emergent Relief" or "MER") ECF No. 4) filed by Plaintiff G.E. and J.E., on behalf of H.E. ("Plaintiff" or "H.E."), and Defendant Freehold Regional High School District Board of Education's ("Defendant" or "Freehold") Motion to Dismiss (("Motion to Dismiss" or "MTD") (ECF No. 9). Based on the parties' written submissions, and after having held oral argument on the Motions, for the reasons stated below, Defendant's Motion to Dismiss is **GRANTED**, and Plaintiff's Motion for Emergent Relief is **DENIED AS MOOT.**

**I.    BACKGROUND**

The Court assumes the parties' familiarity with the facts below, and only recites such facts as are necessary for this Opinion. The Court takes the following facts from Plaintiff's Complaint ("Compl.") and the attached documents. (ECF No. 1.)

H.E., a minor child diagnosed with autism, is a resident of Freehold, New Jersey. (Compl.

¶ 7, ECF No. 1-5, 2.)  H.E. was enrolled in the Freehold Township K-8 School District from kindergarten through eighth grade.  (Compl. ¶ 20.)  As a disabled minor child, several Individualized Education Programs ("IEPs") were developed to help H.E. receive a Free Appropriate Public Education ("FAPE") as he progressed from grade to grade.  (*Id.* ¶¶ 19, 21.)

For the purposes of the instant dispute, there are two relevant IEPs.  The last agreed upon IEP was dated September 10, 2021 ("the September IEP").  (*Id.* ¶ 21, ECF No. 1-5.)  This IEP, developed while H.E. was a student in the Freehold Township K-8 School District, placed H.E. in Freehold's Multiple Disability Program, where H.E. had been enrolled during most of his academic career.  (Compl. ¶¶ 21-22.)  A second IEP, which was "developed for H.E.'s transition to high school," was issued on February 4, 2022 (the "February IEP").  (*Id.* ¶ 24, ECF No. 1-6.)  The February IEP is the subject of dispute and has not yet been signed by H.E.'s parents or adopted as the operative IEP.  (*See generally* February IEP.)  The February IEP would have placed H.E. in the "Autism Program" at Howell High School for the extended school year ("ESY"), and then in an autism classroom in Colts Neck High School for the academic year.  (Compl. ¶ 24.)

Plaintiff's Complaint alleges that H.E.'s parents objected to the February IEP "because it would not provide H.E. with a … FAPE… and would, in fact, be harmful to H.E., causing him to regress socially, emotionally, and academically."  (*Id.* ¶ 40.)  The parties do not dispute that Defendant does not have a high school level equivalent to the multiple disability program that H.E. was in while enrolled at Freehold Township K-8 School District.  (Compl. ¶ 41, ECF No. 1-1, 8.)  Nevertheless, H.E.'s parents objected to the February IEP because they want H.E. placed in an academic setting that most closely mirrored the multiple disability programming he had been in while in elementary and middle school.  (Compl. ¶¶ 40-43.)  H.E.'s parents assert that the "Cognitive Mild" program at the high school "was closer to that provided to him in the multiple

2

disability program of the Freehold Township District," as opposed to the Autism Program. (Compl. ¶ 42.)

## II.  PROCEDURAL HISTORY

Plaintiff filed a due process petition on February 16, 2022, challenging the February IEP and claiming that the February IEP "fails to provide a free appropriate public education," for a myriad of reasons. (ECF No. 1-3, 6.) Then, on July 7, 2022, Plaintiff filed a request for Emergent Relief and Due Process with the New Jersey Office of Special Programs (the "Request for Emergent Relief") (ECF No. 1-2.) In his Request for Emergent Relief, Plaintiff requested several remedies, including, in relevant part, the "IMMEDIATE PROVISION as to immediate 'Stay-Put' in the Multiple disabilities ('MD') class commencing Extended School Year ('ESY') 2022 which commences Monday, July 11, 2022 and onward." (*Id.*, 10-12.)

The Administrative Law Judge ("ALJ") heard argument on Plaintiff's Request for Emergent Relief on August 1, 2022, and issued a decision on August 3, 2022 denying the Request ("ALJ Opinion"). (ECF No. 1-1.) In that denial, the ALJ concluded that the "stay put" IEP is the September 2021 IEP. (*Id.* at 2.) However, the ALJ concluded that the doctrine of "stay put" "cannot be readily applied here since H.E. is transitioning from grade school of the Freehold K-8 district to a high school in the district and therefore, the same programming is not available." (*Id.* at 7.) Further, the ALJ concluded that Plaintiff has not made a sufficient showing that H.E. would be subject to "irreparable harm" if emergent relief was not provided because the assertions as to any regression in H.E.'s behavior were "speculative at this juncture of the proceedings." (*Id.* at 6.) The ALJ ultimately denied the Request for Emergent Relief "since petitioners have not satisfied all of the requisite emergent relief standards." (*Id.* at 7.)

Plaintiff filed his Complaint in this Court on August 15, 2022 and moved this court for

3

Emergent Relief on that same day. (Compl., MER.) Plaintiff requested that this Court enter an order that H.E. should "stay put" and be permitted to "enroll in the Cognitive Mild program pending resolution of Plaintiffs' Due Process Petition." (Compl. 9.)

This Court entered an expedited briefing schedule on August 19, 2022. (ECF No. 7.) Defendant filed Opposition to the Motion for Emergent Relief on August 23, 2022, and Plaintiff filed a Reply on August 30, 2022. (ECF Nos. 10, 13.) Separately, Defendant filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on August 23, 2022. (ECF No. 9.) Plaintiff opposed the Motion to Dismiss on August 29, 2022. (ECF No. 12.) Defendant filed a Reply on August 31, 2022. (ECF No. 14.)

This Court held oral argument on the pending motions on September 21, 2022. (ECF No. 16.)

### III.   LEGAL STANDARDS

#### A.   *Subject Matter Jurisdiction*

Under Federal Rule 12(b)(1), a defendant may move the court to dismiss a complaint if the court lacks subject matter jurisdiction over the dispute. Fed. R. Civ. P. 12(b)(1). "The Third Circuit has identified two types of challenges to the court's jurisdiction under Rule 12(b)(1): 1) facial challenges which are based on the legal sufficiency of the claim as pleaded on the face of the complaint, and 2) factual challenges which are based on the sufficiency of jurisdictional facts." *J.Q. v. Wash. Twp. Sch. Dist.*, 92 F. Supp. 3d 241, 245 (D.N.J. 2015) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Ultimately, courts in the District of New Jersey consider Motions to Dismiss based on a lack of administrative exhaustion as a factual challenge, and not a facial one. *Id.* "'A factual challenge attacks the existence of a court's subject matter jurisdiction apart from any of the pleadings' and, when considering such a challenge, 'no

4

presumption of truthfulness attaches to a plaintiff's allegations.'" *Allen v. State-Operated Sch. Dist.*, No. 12-3128, 2013 U.S. Dist. LEXIS 125923, at *6 (D.N.J. Sep. 4, 2013) (quoting *Abuhouran v. Fletcher Allen Healthcare*, No. 07-5108, 2009 U.S. Dist. LEXIS 54182, at *9 (D.N.J. June 25, 2009)). Ultimately, "[i]n reviewing a factual attack . . . the court may consider evidence outside the pleadings." *J.H. & S.N. ex rel. J.H. v. Egg Harbor Twp. Bd. of Educ.*, No. 08-488, 2009 U.S. Dist. LEXIS 40096, at *6 (D.N.J. May 11, 2009) (internal citations and quotations omitted).

B.  *Failure to State a Claim*

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotations and citations omitted). While Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. DISCUSSION

Since a court's jurisdiction is a threshold issue, the Court first addresses Defendant's arguments directly challenging this Court's jurisdiction.

Defendant asserts that Plaintiff has failed to exhaust his administrative remedies as required under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. "Congress enacted the IDEA to 'ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . .'" *J.Q. v. Wash. Twp. Sch. Dist.*, 92 F. Supp. 3d 241, 246 (D.N.J. 2015) (quoting *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 271 (3d Cir. 2014)). "The IDEA requires participating states to provide disabled children with a FAPE, 20 U.S.C. § 1412(a)(1)(A), which a school district administers through its development of an instructional program set forth in an IEP for the disabled child." *M.M. v. Paterson Bd. of Educ.*, 736 F. App'x 317, 319 (3d Cir. 2018). The IDEA has established an administrative scheme that aggrieved parties must follow to resolve their issues before it is procedurally proper to file suit in federal court. *Wellman v. Butler Area Sch. Dist.*, 877 F.3d 125, 128, 131 (3d Cir. 2017).

Generally, a plaintiff pursuing relief under the IDEA must exhaust their administrative remedies before filing suit in federal court. *Id.* However, a plaintiff can avoid the need to exhaust their administrative remedies if they can show that they fall within an exception to this requirement. *M.M.*, 736 F. App'x at 319. "There are four exceptions to the exhaustion requirement: (1) exhaustion would be futile or inadequate; (2) the issue presented is purely a legal question; (3) the administrative agency cannot grant relief; and (4) exhaustion would cause severe or irreparable harm." *Carmona v. N.J. Dep't of Educ.*, No. 21-18746, 2022 U.S. Dist. LEXIS 152028, at *11 (D.N.J. Aug. 23, 2022).

The parties do not dispute that the ALJ's decision below is interlocutory and thus, Plaintiff has not technically exhausted his administrative remedies. Accordingly, Plaintiff must show that he falls within one of the exceptions to the IDEA's statutory exhaustion requirements for this Court to have jurisdiction of this dispute. *See Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 777 n.1 (3d Cir. 1994) ("Section 1415(e) does not grant a court authority to review an ALJ's decision before the administrative process has been completed.") Here, the parties agree that there are only two viable exhaustion exceptions that might apply – that exhaustion would be futile or inadequate, or that H.E. would suffer irreparable harm if he was required to exhaust his administrative remedies. (*See* September 21, 2022, Oral Argument Transcript ("Tr.")) 4:2-6, ECF No. 17.) However, this Court finds that neither exception to the administrative exhaustion requirement applies, for the reasons stated below.

    A.    *Futility*

Generally, a plaintiff can be excused from the exhaustion requirements found in the IDEA if they can show futility. Courts have held that "in the IDEA § 1415 context, plaintiffs may thus be excused from the pursuit of administrative remedies where they allege systemic legal deficiencies and, correspondingly, request system-wide relief that cannot be provided (or even addressed) through the administrative process." *Beth v. by Yvonne V. v. Carroll*, 87 F.3d 80, 89 (3d Cir. 1996); *see also Mrs. W. v. Tirozzi*, 832 F.2d 748, 757 (2d Cir. 1987) (affirming the waiver of IDEA exhaustion requirements for plaintiffs who "allege[] a pattern and practice of systematic . . . violations unable to be addressed at the due process hearings provided," because the plaintiff's complaint asserts "an agency adopted policy that is contrary to law.") It is not enough for a plaintiff to merely disagree with an ALJ's decision in the administrative hearing process to satisfy the futility exception. *Old Bridge Bd. of Educ. v. R.D.*, No. 15-3886, 2015 U.S.

Dist. LEXIS 94888, at *11 (D.N.J. July 21, 2015).  Ultimately, the law is clear that "a claim is not 'systemic' if it involves only a substantive claim having to do with limited components of a program, and if the administrative process is capable of correcting the problem." *Grieco v. N.J. Dep't of Educ.*, No. 06-cv-4077, 2007 U.S. Dist. LEXIS 46463, at *19 (D.N.J. June 27, 2007) (quoting *Doe v. Arizona Dep't of Educ.,* 111 F.3d 678, 681 (9th Cir. 1997)).

Here, for Plaintiff to rely on the futility exception, he must "allege *systemic* legal deficiencies and, correspondingly, *request system-wide relief* that cannot be provided (or even addressed) through the administrative process." *B.C. v. Wall Twp. Bd. of Educ.*, No. 13-7085, 2013 U.S. Dist. LEXIS 175180, at *5 (D.N.J. Dec. 11, 2013) (emphasis in original).  Plaintiff has not done so.  Plaintiff ultimately agreed that the arguments surrounding futility are ill-supported based on his Complaint and moving papers.  (*See* Tr. 4:12-14.)  The crux of Plaintiff's futility argument is that "at the Office of Administrative Law, this case won't be finished and heard for six months to a year.  By that time, the student [has been] in the wrong class, you can't go back in time." (Tr. at 4:15-18.)  While the Court is sympathetic to Plaintiff's argument based on the facts before the Court, courts in this district have held that "the futility exception only applies where a plaintiff is unable to obtain his or her requested relief due to some administrative defect; the futility exception is not meant to apply to a plaintiff who merely disagrees with the ALJ's decision." *B.C.*, 2013 U.S. Dist. LEXIS 175180, at *5.  *See Carmona v. N.J. Dep't of Educ.*, No. 21-18746, 2022 U.S. Dist. LEXIS 152028, at *15-21 (D.N.J. Aug. 23, 2022).  Simple disagreement with the ALJ's decision, or malcontent with the length of time it takes for a dispute to work its way through the administrative process, without more, is insufficient to be considered futile in this context.  *See J.M. v. Summit City Bd. of Educ.,* No. 19-00159, 2020 U.S. Dist. LEXIS 199924, at *37 (D.N.J. Oct. 27, 2020) (finding no futility when plaintiffs argued that "exhaustion would be futile because

the IDEA administrative process in New Jersey has historically failed to issue decisions within the statutorily mandated timetable" when plaintiffs failed to "cite any authority holding that a state's slow administrative process can render exhaustion futile as to an individual claim.") *See also L.V. v. Montgomery Twp. Sch. Dist. Bd. of Educ.*, No. 13-2595, 2013 U.S. Dist. LEXIS 78662, at *14 (D.N.J. June 5, 2013) (finding that plaintiff has not shown futility and noting that plaintiff's futility argument was "improper," and "merely a recasting of her irreparable harm argument — that the ALJ's failure to grant her emergent motions is causing [plaintiff] to sustain irreparable harm.")

While the Court is aware of pending litigation about New Jersey's timely adjudication of IDEA claims,[1] and the practical implications for H.E., who is currently not in school while awaiting a determination, (Tr. 13:5-25), courts in this District have been clear about what is necessary for Plaintiff to make a successful argument for futility. Plaintiff has not made a showing that "the administrative process available to a party is flawed or otherwise deficient." *L.V.*, 2013 U.S. Dist. LEXIS 78662, at *9. *See id*. (rejecting plaintiff's futility argument when it "centers on her assertion that the administrative process is proceeding too slowly to grant [plaintiff] the relief he allegedly needs," because plaintiff "has not shown why the administrative process is inadequate, or suffers from any systemic flaw that would preclude her from obtaining the relief she seeks.") As a result, the Court does not find that the futility exception applies to Plaintiff's application for emergent relief.

---

[1] *See, e.g., Joanna A. v. Monroe Twp. Bd. of Educ.*, No. 1:21-cv-06283, 2022 U.S. Dist. LEXIS 59787, at *16 (D.N.J. Mar. 30, 2022) (denying Motion to Dismiss filed by State Defendants in a case challenging the length of time it takes the Office of Administrative Law ("OAL") to adjudicate a students' claims.) *See also C.P. v. N.J. Dep't of Educ.*, No. 19-12807, 2022 U.S. Dist. LEXIS 158147, at *22, *27 (D.N.J. Sep. 1, 2022) ("[T]he Court sees ample evidence violations of the IDEA extend back as far as 2005," and noting that "[i]n sum, by Defendants' own account of events, it took longer than [the statutorily proscribed time] to resolve the petitions for each of the named Plaintiffs.")

B.     *Irreparable Harm*

Next, the Court addresses Plaintiff's argument that he should be excused from his requirement to exhaust his administrative remedies because he will suffer irreparable harm. Generally, "mere allegations by plaintiffs of irreversible harm will not be enough to excuse the completion of administrative proceedings. Plaintiffs must provide a sufficient preliminary showing that the child will suffer serious and irreversible mental or physical damage (e.g., irremediable intellectual regression) before the administrative process may be circumvented." *Komninos*, 13 F.3d at 779. To meet the threshold of "irreparable harm," Plaintiff must provide the Court with "affidavits from competent professionals along with other hard evidence that the child faces irreversible damage if the relief is not granted." *Id.* However, "[e]vidence of a student's 'regression' is unlikely to establish irreparable harm because 'in general, the skills lost in regression may be recouped,' and a 'delay in obtaining [an] expected benefit may be redressed by compensable extensions of eligibility for educational aid.'" *M.M.*, 736 F. App'x at 321 (quoting *Komninos*, 13 F.3d at 780).

Here, Plaintiff has not presented this Court with sufficient hard evidence from competent professionals that any harm H.E. may suffer is irreparable. The critical issue is whether H.E. is best suited for the Cognitive Mild Program or the Autism Program as he transitions to high school. Plaintiff argues that placing H.E. in an Autism Program will cause him irreparable harm because of the behaviors H.E. may be exposed to and adopt. (Tr. 5:13-21.)[2]

First, Plaintiff asserts that H.E.'s mother went to observe the Autism Program class and

---

[2] The Court notes that Plaintiff asserted that the Cognitive Mild Program and the Autism Program have the same curriculum. (Tr. 9:14-20). In the context of irreparable harm, Plaintiff's arguments are largely that H.E. will experience mental and/or behavioral regression, not that he will be subject to academic harm.

became concerned that H.E. would pick up on self-injurious habits and practices. (MER 3-4.) H.E.'s mother asserts that she saw children in the class engaging in harmful behaviors that were unchecked by the available paraprofessionals. (Compl. ¶ 32; *see also* (Compl. ¶ 33) ("The autism program takes a behavioral approach to students' education, but H.E. does not have behavioral issues.")[3] This observation of the Autism Program class caused H.E.'s parents to conclude that he would pick up behaviors demonstrated in the Autism Program that he does not currently engage in. (MER 3-4.) Aside from H.E.'s mother's observations of the class, Plaintiff does not provide any other evidence about the asserted behaviors in the class. Thus, these observations alone do not rise to the level of "hard evidence" necessary to permit this Court to conclude that H.E. would suffer irreparable harm if placed in the Autism Program. *See Komninos*, 13 F.3d at 779.

Second, Plaintiff submitted documentation from H.E.'s doctors. The Court has reviewed the documents provided by Plaintiff and will address them in turn.

Plaintiff submitted an unsworn letter from Dr. Patricia E. Manfredonia, H.E.'s pediatrician, dated July 6, 2022. (ECF No. 1-7.) The letter, which is a single paragraph long, notes that H.E has been diagnosed with "high-functioning Autism and Attention Deficit Hyperactivity Disorder (ADHD), Combined Type." (*Id.*) Dr. Manfredonia then opines, as H.E.'s primary care physician, that she is "concerned that [H.E.] will develop a major regression if placed in the Autism classroom at Freehold High School," and concludes that H.E.'s placement "in an Autism classroom would be deleterious to his academic and social-emotional development." (*Id.*) Plaintiff submitted a second unsworn letter from Dr. Manfredonia dated September 21, 2022. (ECF No. 15, 4.) Dr. Manfredonia states she "strong[ly] recommend[s]" that H.E. not be placed in the Autism Program at Howell High School. (*Id.*) She then recommended that H.E. remain home until the "appropriate

---

[3] The parties appear to dispute this characterization of H.E.'s behavior. (ECF No. 10, 5.)

program is decided" because for H.E. "to start in a program which is not suitable for him and from which he may be transferred would cause him more harm than good." (*Id.*)

Neither letter from Dr. Manfredonia addresses exactly how she has come to her conclusions. She does not state that she reviewed the curriculum of either the Autism Program or the Cognitive Mild Program, nor does she indicate that she was able to observe the Autism Program and the behaviors contained therein, directly. Apparently, Dr. Manfredonia "tried contacting [the Freehold Regional High School District's] Supervisor of Special Education, Kimberly Bramley, to discuss the differences between the Autism Program at Howell High School and the Cognitive Mild Program at Freehold Boro High School," but was unable to do so. (*Id.*) Moreover, Dr. Manfredonia only asserts that H.E. may suffer regression, and does not assert that he will suffer irreparable harm. As the Third Circuit has rejected this line of reasoning, *see Komninos*, 13 F.3d at 779 ("we doubt that 'regression' per se constitutes such irreparable harm as to justify an exception to the exhaustion requirement"), the Court cannot find that Dr. Manfredonia's bare assertions about H.E. rise to the level necessary to support a finding of irreparable harm.

Plaintiff also submitted the Certification and Report of Dr. Steven Dyckman, dated July 24, 2022. (ECF No. 1-8.) Dr. Dyckman states that

> Based, in part, on my professional experience with [H.E.] and his parents, it is my firm opinion that [H.E.] must remain in an MD/LLD[4] setting. The most comparable program Freehold Regional has is the Cognitive Mild program. If [H.E] is placed in the Autism program, he will significantly regress academically, socially, and emotionally. This will cause his education experience to be severely

---

[4] According to the documentation submitted by the parties, "MD" stands for "Multiple Disabilities" and "LLD" stands for "Learning Language Disability." (ECF No. 15, 8.)

interrupted.

(*Id.* at 3.)  Dr. Dyckman further states that if H.E. is "inappropriately placed, he will experience severe regression academically in addition to irreparable damage to his emotional and psychological well-being." (*Id.* at 4.)  Dr. Dyckman also submitted a Psychiatric Evaluation, dated July 7, 2022.  (*Id.* at 6-11.)  He concludes that H.E. has been doing well in a multiple disabilities and LLD setting, and should continue in such a setting.  (*Id.* at 11.)  Dr. Dyckman then goes on to state that "[i]f [H.E.] is transitioned to an autistic classroom, it is highly likely to cause severe regression and significant emotional and psychological harm, which could then lead to irreparable damage to his educational, emotional and psychological wellbeing." (*Id.*)

As with Dr. Manfredonia's letters, Dr. Dyckman's report or certification does not assert that he has reviewed the Autism Program curriculum or the Cognitive Mild Curriculum.[5]  In fact, Dr. Dyckman lists the records he reviewed to make his evaluation in both in his Certification to this Court and in his Psychiatric Evaluation of H.E., and yet does not indicate any analysis of the specific programs at issue.  (*Id.* at 3, 9-10.)  General assertions about an "autistic classroom" do not make clear that Dr. Dyckman has reviewed the specific Autism Program that H.E. would be placed in, nor do they indicate that he observed the Autism Program to identify the behavioral issues that may cause H.E. to suffer irreparable harm.

Based on the opinions of Dr. Dyckman and Dr. Manfredonia, the Court is not persuaded that H.E. will suffer irreparable harm if immediate relief is not granted.  "The Third Circuit has made clear that in order to avoid the administrative process, the alleged harm must be irreparable; mere regression is not sufficient."  *L.V.*, 2013 U.S. Dist. LEXIS 78662, at *19.  Based on this

---

[5] Plaintiff asserted at oral argument that Dr. Dyckman has in fact reviewed the Autism Program curriculum.  However, nothing in the record supports that assertion, and there have been no filings addressing this point to date.  (*See* Tr. 21:6-17.)

13

standard, there is insufficient evidence to support that any harm suffered will be irreparable. Neither doctor has indicated that they have reviewed *both* H.E.'s medical records *and* the curricula for the Autism Program and the Cognitive Mild Program, nor has either doctor indicated that they are aware of the behavioral issues that may be present in the Autism Program. Without having done so, this Court must lend their opinions less weight, as their conclusions about any irreparable harm H.E. may suffer in the Autism Program appear to be grounded solely on a review of H.E. himself. *See L.V.*, 2013 U.S. Dist. LEXIS 78662, at *19 (lending a less weight to the opinion of a doctor on irreparable harm "because his conclusions are based solely on review of G.V.'s records.")

Finally, Plaintiff submitted a Neurodevelopmental Initial Evaluation by Dr. Alison Smoller, a Developmental-Behavioral Pediatrician. (ECF No. 15, 6-9.) Dr. Smoller concluded that H.E. should be "placed in an integrated school program where he has the opportunity for more appropriate peer models. Although [H.E.] would benefit significantly from a social skills program within the Autism classroom, it is imperative that he be provided the opportunity for more appropriate peer models in either the Cognitive Mild Program or a Learning and Language Disabled (LLD) Program." (*Id*. at 8-9.)

Here, the Court notes that Dr. Smoller *does* appear to have reviewed the curricula for the Cognitive Mild Program and the Autism Program and included an analysis of both programs in her evaluation. (*Id*. at 8.) It is then telling that, as the only doctor to have reviewed the relevant curricula, Dr. Smoller *does not* state that she believes H.E. would suffer irreparable harm if placed in the Autism Program. In fact, although she recommends that H.E. be placed in "an integrated school program where he has the opportunity for more appropriate peer models . . . in either the Cognitive Mild or a Learning and Language Disabled (LLD) program," she also states that H.E.

14

"would benefit significantly from a social skill program within the Autism classroom." (*Id.*)

Given the unsupported, speculative, and sometimes contradictory evidence presented to the Court, and the Third Circuit's position that the irreparable harm exception should be used sparingly, the Court finds that Plaintiff has not made a sufficient showing to support irreparable harm. The Court is asked to address a very narrow question here: whether "exhaustion [of administrative remedies] would work a severe or irreparable harm" on Plaintiff. *Old Bridge Bd. of Educ.*, 2015 U.S. Dist. LEXIS 94888, at *12. However, "mere allegations by plaintiffs of irreversible harm will not be enough to excuse the completion of administrative proceedings." *Komninos*, 13 F.3d at 779. The Third Circuit has made clear that reliance on the irreparable harm exception to the exhaustion of administrative remedies "is to be sparingly invoked." *Id*. Here, as was the case before the ALJ, Plaintiff has failed to show exhaustion of administrative remedies would subject H.E. to irreparable harm, despite his attempts to do so via the submissions of medical professionals. (*See* ALJ Opinion, 6) (finding that "Petitioner provided medical opinions in support of [the argument that H.E. would suffer irreparable harm], but neither of those opinions touched upon the course curriculum or why same was not appropriate," and ultimately concluding that "petitioners have failed to show that H.E. will suffer irreparable harm if his placement is not immediately changed . . . .")

In sum, H.E. has failed to demonstrate that his Motion for Emergent Relief is properly before this Court in light of the ongoing administrative proceedings below. Plaintiff has not shown that any of the exceptions to the requirement that administrative proceedings be exhausted before bringing an action in federal court apply.

## V. CONCLUSION

As discussed above, Plaintiff does not fall within any of the identified exceptions to the

requirement to exhaust administrative remedies that would permit this Court to adjudicate his Request for Emergent Relief.  As a result, this Court does not have jurisdiction over this dispute at this time.  In light of that finding, the Court declines to address the merits of Plaintiff's Motion for Emergent Relief and **DENIES AS MOOT** the Motion for Emergent Relief.  Defendant's Motion to Dismiss is **GRANTED**.  An appropriate order follows.

Date: October 13, 2022                                          */s/ Georgette Castner*
                                                                                     GEORGETTE CASTNER, U.S.D.J.